## Schweikert v. Richards, et al.

(Decided June 17, 1911.)

## Appeal from Campbell Circuit Court.

1. Personal Injuries—Finding of Jury—Evidence—Bite of Dog— In an action for damages resulting from the bite of a dog, evidence examined and held that the verdict of the jury in favor of the defendant is not flagrantly against the evidence.

2. Same—Where Wife Had No Interest in Dog—Where husband and wife are alleged to be the owners of a dog that bit and injured plaintiff, and are jointly sued, evidence of a statement made by the wife that the dog would bite that way; that it had bitten her niece, was properly withdrawn from the jury when it developed that the wife had no interest in the dog, and the court for that reason directed a verdict in her favor.

MATT MOORE an SAMUEL BELEG for appellant.

M. A. BURKAMP for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

The plaintiff, Albert E. Schweikert, claiming that he was bitten by a dog belonging to the defendant, Walter J. Richards and Nellie Richards, his wife, and that the dog was dangerous and vicious, and that this fact was known to the defendants, brought this action against them to recover damages. There being a failure of proof as to Nellie Richards, the trial court directed a verdict in her favor. The case as to Walter J. Richards was submitted to the jury, which returned a verdict in his favor, and plaintiff appeals.

Plaintiff is a furnace setter and sheet metal worker. At the time of his injuries he was twenty-four years old. He was regularly employed at that time by a firm in Cincinnati. When injured he was suffering from an attack of la grippe and was temporarily in the employ of his father. His father then resided at 725 York street, in the city of Newport, Kentucky. The defendants lived at 727 York street, and their premises adjoined those of plaintiff's father.

Between ten and eleven o'clock on the morning of October 29, 1909, plaintiff, who was at work on the second floor of his father's shop, started downstairs for the purpose of getting some material with which to finish his task. At the foot of the stairway leading from the second to the first floor, there is a cement landing. At this point there is a door leading to the alley and another door to the lower part of the shop, and the place is dark. When plaintiff reached the foot of the stairs he claims he was seized by the leg or run into by something, which threw him off his balance. To steady himself he thrust out his right hand, and whatever it was that had attacked or run into him, bit him. He then found out it was a dog. Upon being bitten he shook the dog off. The dog immediately came back. From that time on the fight was fast and furious, and, to use plaintiff's own phraseology, "the dog attended strictly to business." At the same time plaintiff looked after his end of the fight and kept up a vigorous kicking. Neither seemed to lack courage. Notwithstanding the fact that the dog was being constantly kicked, he kept renewing the attack and biting at plaintiff's legs. Finding that his kicks were making no perceptible impression upon the dog, plaintiff seized a piece of box lumber and began to hit the dog with it. After several blows the dog was stunned, and plaintiff finally dispatched it by hitting it on the head

with a crow bar. The dog that bit plaintiff was a brown, smoothhaired dog of the dachshund variety, and during the fight "looked like he might have been about a foot high." Upon cross-examination, plaintiff stated that it was so dark that neither he nor the dog knew the other was there until they were right on top of each other.

When the fight was over, plaintiff dressed his hand as best he could and then proceeded to the doctor's. Not finding the physician he called upon, he returned to his own home. His wife then called in Dr. Anderson, who cauterized the wound and gave it antiseptic treatment. At the same time he recommended that the dog's head be cut off and packed in ice, and then taken to Dr. A. P. Cole, of Cincinnati, Ohio, a physician who was engaged in administering the Pasteur treatment for the prevention of hydrophobia. The dog's head was cut off and packed in ice. The next morning it was taken to Dr. Cole. The latter examined the dog's brain and found it disclosed the presence of negri-bodies, thus proving, as he claimed, the existence of rabies. Plaintiff was then given the Pasteur anti-hydrophobia treatment for a period of twenty-eight days. This treatment consisted of injections around the abdomen, and, according to plaintiff, produced a pain on a par with the toothache; it also had the effect of making him drowsy, and he was wholly incapacitated from doing any work during the time he took the treatment. His finger that was bitten remained stiff for about six months. He paid Dr. Anderson ten dollars and Dr. Cole twenty-five dollars for examining the dog's head and one hundred dollars for the Pasteur treatment.

The evidence further shows that the defendant, Walter J. Richards, was the owner of a dog of the dachshund breed which he kept upon his premises. On the morning of October 29, 1909, a young man by the name of John Schreiber came to defendant's home for the purpose of delivering groceries. Defendant's dog was tied at the time upon the back of the premises. Schreiber was in the habit of playing with the dog. When he went to him on this occasion the dog bit his hand. He, however, acknowledges that it was his fault that the dog bit him. He then went around to the front of defendant's store, and defendant said that he would leave the damn dog loose; that he didn't want a dog around the place that would do that. The next morning the same witness claims that

Mrs. Richards said she thought that dog would bite that way; that it bit her niece the same way. Schreiber and another witness identified the dog that bit plaintiff as the dog belonging to defendant, Richards,

The defendant, Walter Richards, testified that he had a small, yellow dog of the dachshund variety, but that the dog that bit plaintiff was not his dog. The dog he had was of a gentle, docile and playful disposition—so much so that a man who occupied the second floor of the premises where he lived would frequently bring his baby down and let him play with the dog. The only reason the dog bit the young boy Schreiber was that the latter persisted in teasing it whenever he came to the house. Aside from this incident, no one ever complained of the dog's disposition. He also testified that he never turned the dog loose until about dinner time, and that he was not present when Schreiber was bit and did not know anything about it until he returned to the house. He also stated that Mrs. Richards had no interest whatever in the dog.

Several witnesses, including the man whose baby played with the dog that Richards owned, testified to its good traits.

As there was no evidence tending to show that Mrs. Richards had any interest in the dog that her husband owned, the trial court properly directed a verdict in her favor; and, upon doing this, he properly withdrew from the consideration of the jury the statement that Schreiber alleges she made with reference to the dog biting her niece. Being no longer a party to the action, an admission by her was not admissible.

As the instructions given by the trial court were prepared by plaintiff's counsel, plaintiff can not complain of them.

Plaintiff's chief complaint is that the verdict is flagrantly against the evidence. That plaintiff was bitten by a dog, there can be no doubt; but, whether or not the dog that bit him belonged to the defendant is another question. It is earnestly contended that, because the dog that bit plaintiff was recognized by two witnesses as defendant's dog, and the latter's dog never came back, this is sufficient to overcome the evidence to the effect that it was not defendant's dog that bit plaintiff. In this connection, however, it must be remembered that the dog that bit plaintiff had been beheaded, and it does

not appear that it had upon its body any marks that would differentiate it from any other dogs of the same breed. Furthermore, plaintiff claims that the dog that bit him was a brown dog. The defendant's dog is always referred to in the evidence as a yellow dog. The fact that defendant's dog never came back is not conclusive of the question. The proof shows that the dog had wandered away once before, and was found in possession of strangers. The death of a dog is never presumed because he wanders away and never comes back; and, as counsel for defendant suggests, defendant is yet a young man and may live to see his dog return.

In view of these facts, and the further fact that defendant testified that the dog that was beheaded was not his dog, and that he did not turn his dog loose until dinner time, which was long after plaintiff claims to have been bitten, we can not disturb the finding of the jury on the ground that it is flagrantly against the evidence.

Judgment affirmed.

JUDGE LASSING dissents.